## Nash v. Commonwealth.

(Decided October 23, 1931.)

J. F. CATRON for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Reversing.

Jess Nash, Bill Collins and Chester Humflett were indicted in the Knox circuit court for the murder of Roy Disney. On the trial of Nash he was found guilty and his punishment fixed at death. He appeals.

Briefly stated, the facts are that Disney was shot from ambush while walking along the road. He died a few days later. Nash, when arrested, voluntarily confessed that he did the shooting, and on the trial the commonwealth showed that there was a maple stump, around which thick sprouts had grown up, a few yards from the road where Disney was shot. Some twigs had been broken off so that a man could see through the bushes to shoot. The ground was tramped behind the bushes, showing that some persons had been there for some time before the shooting. The commonwealth showed by evi-

dence that Nash and Chester Humflett had been behind this bush since 4 o'clock on the afternoon that Disney was shot, and that Humflett had left Nash there a short time before the shot was fired, and that Nash joined him soon thereafter. It was also shown that Nash had procured the gun a day or so before and had Humflett to buy the shells with which it was loaded.

On the other hand, Nash testified that Bill Collins was his uncle; that Collins wanted to kill Nash because he had seduced his sister; and that Collins came by on his horse and took the gun from him and did the shooting and then went away on his horse. He admitted making the statements confessing he had done the shooting, but he said he did this at the request of Collins and that Collins had agreed to pay him for doing this. He also introduced proof showing that about four years before this he had been poisoned; that before this he was an industrious, quiet man and all right, but after this his mind was not right and he had no more mind than a child twelve years old. He testified that he had nothing against Disney and no reason for shooting him.

Chester Humflett was twelve years old. He was introduced as a witness by the commonwealth and testified, in substance, as above stated. The commonwealth then introduced as a witness the county attorney, who testified to Nash's voluntary confession, and on his redirect examination he testified, in substance, as follows: "On Tuesday morning Chester Humflett was brought out of jail to my office and told me and Judge Baker there in the presence of Mr. Taylor and Miss Marsee, the full and complete story I have told the jury just now, that Nash told and then took us to the ground in company with myself and Mr. Taylor. . . . He showed us a stump, I think it was some kind of a maple stump with some sprouts that had grown up around it, second growth and in between that, about the middle, some few of the twigs had been broken out about 6 or 8 inches and he showed us where he sat on the left of Mr. Nash while Nash sat on the right and where they had been sitting up there waiting for him for quite a time, he told us for something like an hour or hour and a half before they saw Mr. Disney coming and then he told us he saw Nash shoot him. And after he did that he showed us where Mr. Disney was in the road when he fell. He brought us back then; showed us through the cornfield the way they went and the way they came out into the road and how

they went after the killing." Nash moved to exclude this evidence; his motion was overruled and he excepted.

Nash's defense was that Collins shot Disney and that he did not shoot him. This statement of Chester Humflett, out of court, and not in the presence of Nash, went to the gist of the case. If what Humflett told the county attorney was true, Nash was guilty and his defense on the trial was false. The commonwealth could not thus get before the jury what the witness had stated out of court and had failed to testify to in court.

Humflett was not asked if he had made these statements, and the evidence was not competent to contradict his testimony on the trial unless the proper foundation was first laid. See Champ v. Com., 2 Metc. 24, 74 Am. Dec. 388, and Garrison v. Com., 122 Ky. 882, 93 S. W. 594, 29 Ky. Law Rep. 411, as to the rule in such cases.

The evidence here was plainly very prejudicial to the defendant, for it went to the turning point of the case, and there was no other testimony introduced showing these facts. The court is constrained, therefore, to hold that the admission of the testimony was improper and that a new trial must be granted.

There was proof that for several days before the homicide Nash had been going around with Chester Humflett, sleeping out at night, and one night they slept under the floor of the house in which Nash's wife lived. The next morning Mrs. Nash went down to the spring and came back much frightened and said she had seen a man down there; Nash was down there. In discussing Jess Nash's action and conduct in lying under the floor of the house in which his wife lived, a few nights before the killing of Roy Disney, the commonwealth attorney said: "Jess Nash was jealous of his wife and the deceased, Roy Disney, and killed Disney because he was jealous of him." There was no evidence of any improper relations between Disney and Nash's wife, and no evidence that Nash was jealous of Disney. The commonwealth attorney in his closing argument should not go beyond the evidence heard before the jury, and if he draws inferences from the facts shown, these should be stated as his inferences, not as facts shown by the evidence. The jury here may have understood the statement of the commonwealth attorney, not as an inference of his, but as a fact. The court should have sustained the defendant's objection to the statement.

694

The court did not err in allowing the neighbors of Nash, though they were not experts, to testify that they knew him well and had never seen anything wrong with his mind.

The court did not err in admitting the testimony that a day or so before the killing Nash and Humflett had broken into Disney's house in search of pistols and had taken away certain articles from the house. In prosecutions for murder the defendant's intent is the gist of the case. The fact that he and Humflett broke into Disney's house for the purpose of getting Disney's pistol so shortly before the attack on Disney was a fact competent to show his state of mind toward Disney and preparation for what he did. Burnett v. Com., 172 Ky. 397, 189 S. W. 460.

The court properly refused to instruct the jury on self-defense. There was no evidence to warrant such an instruction, as Disney was simply shot from the maple bush as he was walking down the road. The fact that the grass was tramped around the maple stump was no evidence of a struggle there, because Disney was never at the stump, according to proof, but was simply walking down the road. There was no evidence that Disney did anything to put anybody in danger or that Nash was in any way in danger at the hands of Disney at the time the shot was fired.

Judgment reversed, and cause remanded for a new trial.